Jon P. Stride, OSB No. 90388
jons@tonkon.com
David S. **Aman**, OSB No. 96210
davida@tonkon.com
TONKON TORP LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204
Stride Direct Dial:        503.802.2034
Stride Direct FAX:        503.972.3734
Aman Direct Dial:        503.802.2053
Aman Direct FAX:        503.972.3753

Attorneys for Plaintiff Alternative Legal Solutions, Inc., dba Compli

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| ALTERNATIVE LEGAL SOLUTIONS, INC., an Oregon corporation, dba COMPLI,<br><br>Plaintiff,<br><br>v.<br><br>FERMAN MANAGEMENT SERVICES CORPORATION, a Florida corporation; MOSAIC INTERACTIVE, LLC, a Florida limited liability company; and STEPHEN **B. STRASKE II**, individually,<br><br>Defendants. | Civil No.<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF for:<br><br>Federal Computer Fraud and Abuse Act; Misappropriation of Trade Secrets; Breach of Contract; **Tortious** Interference with Contract; and Tortious Interference with Prospective Business Relationships; Trespass<br><br>DEMAND FOR JURY TRIAL |

For its complaint against defendants Fesman Management Services Corporation

("Fesman"), Mosaic Interactive, LLC ("Mosaic") and Stephen B. Straske II ("Straske"), plaintiff

Alternative Legal Solutions, Inc., dba Compli ("Compli"), alleges as follows:

## INTRODUCTION

1.      This case is about the defendants' unauthorized access to, and coordinated

effort to misappropriate and misuse, Compli's proprietary web-based Dealership Compliance

Management System ("DCMS") to establish and operate a competing company.

2.    Compli develops, sells, installs and provides ongoing service for its web-based DCMS. Founded in 2000, Compli launched its first beta product in 2002 after a nearly two-year period of development. Compli enhanced its product with governance content and enhanced management reporting capabilities in 2003 and began marketing and selling its DCMS to 18 industries in 2004. By January 2005, Compli began to focus its marketing and sales on the auto dealer industry nationwide, expending significant time and money developing specific programs and services directed at this industry. Compli uses a subscription model to sell its product, where its clients pay an annual license fee for authorized access to its system.

3.    Compli's DCMS is accessed by dealer employee users and designated system administrators by using a confidential secure password to enter a robust web site. The web site is populated with client-specific data and is hosted by a Compli contractor. The user can review policies, complete training exercises, and file reports on line. The system administrators can establish each employee's required training and policy reviews and determine who in the organization will receive and monitor the employee's reports. Compli's DCMS provides training and policies related to employment practices risks (harassment, discrimination, FMLA and wage and hour issues), specific auto dealer regulatory risks (selling, advertising, finance and insurances practices), corporate governance, internal financial controls, worker safety, information technology protection and environmental risks. Compli's DCMS allows its clients to measure employee activity to reduce organizational risk.

4.    Until Mosaic entered the auto dealer market with a web-based compliance system, Compli considered its one true competitor to be HotlinkHR, a California-based company that markets primarily in California. Mosaic is introducing its product nationwide in an attempt to compete directly with Compli.

5.    Defendants' unlawful access to, and acquisition and misuse of, Compli's proprietary and confidential information has enabled Mosaic to unlawfully develop a competing

Page **2** –COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF– By Plaintiff Alternative Legal Solutions, Inc, dba Compli

DCMS and has damaged Compli and improperly enriched defendants. Defendants must be permanently enjoined from further misuse of Compli's information to prevent them from further profiting from their misconduct and from further harm to Compli.

## PARTIES

6.     Plaintiff Compli is an Oregon corporation with its principal place of business in Portland, Oregon. Compli develops and licenses, primarily to automobile dealerships, web-based software provided compliance management systems.

7.     Defendant Ferman is a Florida corporation with its principal place of business in Tampa, Florida. Ferman and its affiliate, Ferman Motor Car Company, operate auto dealerships throughout Florida.

8.     Defendant Mosaic is a Florida limited liability company with its principal place of business in Tampa, Florida. Mosaic has developed a dealership compliance management system that in part mirrors Compli's system. Mosaic's president is James S. Ganther ("Ganther").

9.     Defendant Straske is, on information and belief, a Florida resident. He is the vice president and corporate counsel for Ferman and a director of Mosaic.

## JURISDICTION AND VENUE

10.     Compli's first cause of action arises under the Federal Computer Fraud and Abuse Act, 18 USC § 1030 *et seq.;* thus, this Court has subject matter jurisdiction over this action pursuant to 18 USC § 1030(g) and 28 USC § 1331. This Court also has subject matter jurisdiction over the claims in this case pursuant to 28 USC § 1332 under its diversity jurisdiction in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000. In addition, Compli will seek to amend this Complaint to add a claim for copyright infringement under the Copyright Act, 17 USC § 101, *et seq.* once we obtain the proper copyright registrations. At that point, the Court will have subject matter jurisdiction over that claim pursuant to 28 USC § 1338.

11.    Venue is proper in this district, pursuant to 28 USC § 1391, because a substantial part of the property that is the subject of this action is situated in this district, the harm caused by defendants has occurred in this district, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint. Defendant Ferman has expressly submitted to personal jurisdiction and venue in this district.

## FACTUAL ALLEGATIONS

12.    Effective June 1, 2005, Ferman executed an agreement with Compli ("License Agreement") in which, among other things, Compli licensed to Ferman the right to use the Compli DCMS. By its terms, the License Agreement was effective for 18 months. Relevant portions of the License Agreement are attached to and incorporated in this Complaint as Exhibit 1.

13.    In reliance upon Ferman's execution of the License Agreement, Compli provided Ferman with access to its DCMS, including the organizational structure and logic that Compli made available to designated system administrators at Ferman. Compli's DCMS contains proprietary copyrighted material and confidential trade secret information

14.    .  In the License Agreement, Ferman agreed to a number of terms intended to protect Compli's proprietary and trade secret information and copyrighted material and to provide Compli with a remedy for violation of the agreement as follows:

      a.    1.    <u>License Grant</u>. ". . . Except as expressly permitted under this Agreement, Customer shall not modify, supplement, adapt, translate or create derivative works based upon the System."

      b.    2.    <u>Authorized Users</u>. "Customer warrants that all Authorized Users will be bound by this Agreement. . . . In the event that unauthorized third parties obtain access to the System in violation of any prohibitions in this Agreement, Customer shall indemnify and hold Compli harmless for all costs, expenses losses and damages . . .."

      c.    5.    <u>Comvli Content</u>. "The System includes content that cannot be modified by Customer ('Compli Content'). Compli Content is the valuable, confidential, copyrighted and trade secret property of Compli or its licensors. As between the parties, Compli owns all

right, title and interest in all Compli Content. Customer may make printouts or store insubstantial amounts of Compli Content to the extent permitted under the 'fair use' provisions of the Copyright Act of 1976."

d.      6.      <u>Confidentiality</u>. "Each party agrees not to use the Confidential Information of the other party for its own benefit, or for the benefit of any third party (except as allowed herein), and agrees not to disclose the Confidential Information to any third party.. .."

e.      <u>Exhibit A.</u>  "Customer and Authorized Users may not:  Compete with Compli by developing a competing product in the compliance marketplace."

15.      From the effective date of the License Agreement until approximately February of 2007, Compli believed that Ferman was performing appropriately under the terms of the License Agreement.  Compli provided technical support services to Ferman and, when requested, modified the content and functionality of the dealer compliance management system.

16.      Under the terms of the License Agreement, Ferman was required to provide written notice to Compli 60 days or more prior to the termination of the License Agreement if Ferman did not intend to renew the agreement.  Accordingly, Ferman's written non-renewal notice was due on October 1, 2006.  In approximately February and March of 2007, Compli began to ask Ferman about Ferman's failure to make the 2007 renewal payment.  After repeated inquiries, Ferman stated that it had terminated the License Agreement and had no intention of continuing to use Compli's services.  Ferman indicated that it was going to use an alternative provider.  According to Ferman, it had stopped using Compli's system as of the termination date.

17.      Ferman's alternative dealer compliance management service provider is defendant Mosaic.

18.      On information and belief, sometime in 2006, after Ferman executed the License Agreement with Compli and implemented the Compli DCMS throughout its workforce, Straske and other Ferman employees, along with Ganther and others engaged by him, decided to develop a web-based dealership compliance management system to replace Compli at Ferman

and to compete directly against Compli in the auto sales industry.

19.    In furtherance of their goal to develop a competing compliance management system and to take market share away from Compli, Ferman allowed access to the Compli system to those who were not authorized to know or use the system password. Further, on information and belief, Ferman allowed Straske and/or other unauthorized users to access functional aspects of the system that were not available to end-user employees.

20.    On information and belief, Ferman, Straske, Ganther and others analyzed, copied and implemented aspects of Compli's DCMS, including its organization and logic in the development of a competing system. By accessing Compli's DCMS, they identified ways to differentiate a competing DCMS in product function and style.

21.    On January 4, 2007, a date after Ferman had purported to discontinue use of Compli's system, Straske logged onto the Compli web site through Ferman's access code. Using a secured password that he was not authorized to use, he reviewed and signed a policy and completed a training module.

22.    On January 19 and 26, 2007, dates after Ferman had purported to discontinue use of Compli's system, Ganther logged onto the Compli web site using Ferman's access code. Using a secure password that he was not authorized to use, Ganther reviewed and signed three policies and completed one training module. On February 8, 2007, Ganther again logged onto Compli's web site and completed another training module.

23.    On February 9, 2007, a date after Ferman had purported to discontinue use of Compli's system, one of Ferman's designated system administrators, Kimberly White, created two new system users—Tim Jenkins and Lindsey Bohnensteihl. On February 13, 2007, Bohnensteihl used a secure password that she was not authorized to use to log onto the Compli web site and completed 11 training modules. Bohnensteihl accessed the Compli web site through the same Internet system provider as Ganther.

24.    None of the individuals named in paragraphs 21 through 23, above, were

authorized to access Compli's web site using a Ferman access code after Ferman had purported to terminate Compli's services. Moreover, on information and belief, Ganther, Jenkins and Bohnensteihl were not Ferman employees at the time they accessed Compli's web site and thus were not authorized to receive or use the password to the Compli system. They and Straske were, on information and belief, acting on behalf of Mosaic and to further Mosaic's misappropriation of Compli's proprietary material and confidential information.

25. On October 2, 2006, Mosaic filed its Articles of Organization with the Florida State Division of Corporations. On October 3rd, Fountain Holdings Corporation, Mosaic's managing member, filed its Articles of Incorporation with the Florida State Division of Corporations. Ferman, Straske, Ganther and others, created these entities for the purpose of operating a dealership compliance management system business that they had created using copyrighted material and proprietary, confidential information they had wrongfully acquired from Compli.

26. Although defendant Ferman represented to Compli that it had executed the License Agreement for the sole purpose of using the Compli dealership compliance management system for its intended business purpose, Ferman and the other defendants used the Compli system as a source of material and information for the development of the Mosaic dealership compliance management system.

27. Since approximately April of 2007, Mosaic has been advertising and marketing its dealership compliance management system to auto dealers, including to Compli's current customers and prospective customers. Mosaic has marketed its product in Oregon to potential customers and business partners. On information and belief, some of Compli's prospective customers have elected to engage Mosaic's services or are considering Mosaic's services rather than Compli's.

## CLAIMS

### First Claim for Relief

### (Violation of the Computer Fraud and Abuse Act − 18 USC 1030 *et* seq
### Against All Defendants)

28.     Plaintiff realleges and incorporates herein its allegations in paragraphs 1 through 27, above.

29.     Defendants have violated 18 USC § 1030(a)(2)(C) by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to that computer, and by obtaining information from that protected computer.

30.     Defendants have violated 18 USC § 1030(a)(4) by knowingly, and with the intent to defraud Compli, accessing a protected computer, without authorization or by exceeding authorized access to that computer, and by means of that conduct, defendants furthered their intended fraud and obtained one or more things of value, including but not limited to Compli's proprietary and copyrighted material and confidential, trade secret information.

31.     Defendants have violated 18 USC §§ 1030(a)(5)(A)(ii) and (iii) by intentionally accessing a protected computer without authorization, causing damage to Compli, recklessly or without due regard for their actions.

32.     The computer system or systems that defendants accessed as described above, constitute a "protected computer" within the meaning of 18 USC § 1030(e)(2)(B).

33.     Compli has suffered damages and loss by reason of these violations, including harm to Compli's DCMS business in an amount to be proven at trial, but in any event, in an amount well over $5,000 aggregated over a one-year period.

34.     Defendants' unlawful access to and misappropriation from Compli's protected computers have caused Compli irreparable harm. Unless restrained and enjoined, defendants will continue to benefit from those acts to cause irreparable harm to Compli.

Compli's remedy at law is not adequate to compensate it for its actual and threatened injuries. Therefore, Compli is entitled to injunctive relief as provided by 18 USC § 1030(g).

### Second Claim for Relief

### (Misappropriation of Trade Secrets - ORS 646.461 *et seq.*

### Against All Defendants)

35.     Plaintiff realleges and incorporates herein its allegations in paragraphs 1 through 27, above.

36.     Compli provided confidential, trade secret information, including passwords, to Ferman in reliance on Ferman's agreement that Ferman would not disclose that information to anyone not authorized to receive it.

37.     Ferman illegally used and disclosed Compli's trade secrets to others without the express or implied consent of Compli when Ferman knew that it had acquired those trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

38.     Straske and Mosaic illegally acquired Compli's trade secrets, including passwords, from Ferman and used those trade secrets when they knew that Ferman owed a duty to Compli to maintain their secrecy or limit their use.

39.     Defendants' misappropriation of Compli's trade secrets has unjustly enriched defendants and damaged Compli in an amount to be proven at trial.

40.     Defendants' unlawful access to and misappropriation from Compli's protected computers have caused Compli irreparable harm. Unless restrained and enjoined, defendants will continue to benefit from those acts to cause irreparable harm to Compli. Compli's remedy at law is not adequate to compensate it for its actual and threatened injuries. Therefore, Compli is entitled to injunctive relief pursuant to ORS 646.463.

41.     Defendants' conduct was willful or malicious. Therefore, Compli is entitled to recover twice the amount of the award it seeks under this claim pursuant to

ORS 646.465(3) and its reasonable attorney fees from defendants pursuant to ORS 646.467 that it incurs in proving these claims.

### Third Claim for Relief

### (Breach of Contract Against Defendant Ferman)

### Count I

### (Breach of Paragraph 1 – Creating a Derivative Work)

42.    Plaintiff realleges and incorporates herein its allegations in paragraphs 1 through 27, above.

43.    Paragraph 5 of the License Agreement expressly prohibits Ferman from modifying Compli's contract.

44.    Defendants helped create the Mosaic dealership compliance management system by reference to the Compli system as the template for its web pages.  As a result, Mosaic's system is a derivative work of Compli's system; thus Ferman breached the License Agreement by creating a derivative work of Compli's work.

45.    Compli has performed all conditions precedent to obligate Ferman to perform under the License Agreement.

46.    Compli has been damaged by Ferman's breach in an amount to be proven at trial.

47.    Pursuant to paragraph 11 of the License Agreement, Compli is entitled to recover its reasonable attorney fees that it incurs in pursuing this claim against Ferman.

### Count II

### (Breach of Paragraph 2 – Allowing Access to Unauthorized Parties)

48.    Plaintiff realleges and incorporates herein its allegations in paragraphs 1 through 27 and paragraphs 44 and 47, above.

49.    Ferman allowed Straske (in his capacity as a director of Mosaic), Ganther and others to access the Compli web site and computer information in breach of paragraph 2 of

the License Agreement.

   *50.* As a result of Ferman's breach of the License Agreement, Mosaic acquired Compli's proprietary and copyrighted material and confidential trade secret information.  Due to Ferman's breach, Mosaic developed a dealership compliance management system that competes directly with Compli causing Compli to lose sales and potential customers.

   51. Under the License Agreement, Ferman is obligated to indemnify Compli for all damages that Compli suffers as a result of Mosaic's illegal competition with Compli based on Mosaic's use of information disclosed by Ferman.

   **52.** Compli is entitled to recover damages from Ferman for its breach of the License Agreement in an amount to be proven at trial.

   **53.** Compli is entitled to recover from Ferman under Ferman's indemnification obligation, all damages that Compli suffers from Mosaic's wrongful competition in an amount to be proven at trial.

## Count III

### (Breach of Paragraph *6* − Confidentiality)

   **54.** Plaintiff realleges and incorporates herein its allegations in paragraphs 1 through 27 and paragraphs 44 and 47, above.

   **55.** Ferman owed a duty to Compli to protect Compli's confidential, trade secret information from disclosure.  Ferman breached that duty when it allowed Straske, Ganther, Mosaic and others to access the Compli web site.

   **56.** As a result of Ferman's breach, Straske, Ganther and Mosaic used Compli's trade secret information to develop a dealership compliance management system that Mosaic has used to compete directly with Compli.

   **57.** Due to Ferman's breach, Compli has been damaged in an amount to be proven at trial.

### Count IV

### (Breach of Exhibit A – Developing a Competing Product)

58.    Plaintiff realleges and incorporates herein its allegations in paragraphs 1 through 27 and paragraphs 44 and 47, above.

59.    In Exhibit A to the License Agreement, Ferman agreed that it would refrain from developing a product that competed with Compli's dealership compliance management system.

60.    In concert with Straske and Mosaic, Ferman has breached the License Agreement by developing a competing product. Ferman's breach of this provision has damaged Compli in an amount to be proven at trial.

### Fourth Claim for Relief

### (Tortious Interference With Contract – Against Defendants Straske and Mosaic)

61.    Plaintiff realleges and incorporates herein its allegations in paragraphs 1 through 27, above.

62.    Straske, acting as a director of Mosaic, and Mosaic interfered with Compli's contract with Ferman through the improper means of misappropriating Compli's trade secrets and violating 18 USC § 1030 *et seq.*

63.    As a result of Straske and Mosaic's interference, Ferman terminated its contract with Compli.

64.    Straske and Mosaic's tortious interference with Compli's contract with Ferman has damaged Compli in an amount to be proven at trial.

65.    Straske and Mosaic acted intentionally, with malice, and have shown a reckless and outrageous indifference to a highly unreasonable risk of harm to plaintiff and have acted with a conscious indifference to plaintiffs welfare. Accordingly, punitive damages in an amount to be proven at trial should be awarded, jointly and severally, against Straske and Mosaic to punish them and to deter similar conduct in the future.

### Fifth Claim for Relief

### (Tortious Interference with Prospective Business Relationships

### Against All Defendants)

66.     Plaintiff realleges and incorporates herein its allegations in paragraphs 1 through 27, above.

67.     Defendants have interfered with Compli's prospective customers through the improper means of misappropriating Compli's trade secrets and violating 18 USC § 1030 *et seq.*

68.     As a result of defendants' improper interference, Compli has lost prospective business with auto sales companies and has lost potential relationships with partners in the auto sales industry.

69.     Due to defendants' wrongful interference, Compli has been damaged in an amount to be proven at trial.

70.     Defendants acted intentionally, with malice, and have shown a reckless and outrageous indifference to a highly unreasonable risk of harm to plaintiff and have acted with a conscious indifference to plaintiff's welfare.  Accordingly, punitive damages in an amount to be proven at trial should be awarded, jointly and severally, against Ferman, Straske and Mosaic to punish them and to deter similar conduct in the future.

### Sixth Claim for Relief

### (Trespass – Against All Defendants)

71.     Plaintiff realleges and incorporates herein it allegations in paragraphs 1 through 27, above.

72.     At all times material to this Complaint, Compli had legal title to and actual possession of the DCMS, its access-restricted internet-based system and data, as described above.

73.     Without Compli's consent and against Compli's will, defendants accessed

Compli's web site. Defendants' access was not authorized and was wrongful.

74.    Defendants' access of Compli's web site interfered with Compli's use or possession of the DCMS and was for the wrongful purpose of misappropriating Compli's proprietary, copyrighted and trade secret information.

**75.**    Defendants' trespass and interference proximately caused damages to Compli including, but not limited to, damage to Compli's rights to dominion and control over its property, damage to the confidential and copyrighted nature of its DCMS, and deprived Compli of the intended use of its property.

76.    Compli is entitled to recover from defendants any and all damages it sustained as a result of such trespass, in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Compli prays for relief as follows:

1.    On plaintiffs First Claim for Relief:

   a.    Judgment in plaintiffs favor and against all defendants in an amount to be proven at trial;

   b.    For a preliminary and permanent injunction restraining defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them from:

   i.    accessing plaintiffs restricted-access DCMS,

   ii.    selling, distributing or using any property or proprietary, copyrighted, confidential or trade secret information obtained from plaintiffs DCMS, including the sale, distribution or use of the Mosaic DCMS that contains any of plaintiffs proprietary, copyrighted, confidential or trade secret information or is derived from that information, and

   iii.    otherwise engaging in acts of unfair competition and interference with plaintiffs business relationships;

2.    On plaintiffs Second Claim for Relief:

    a.    Judgment in plaintiffs favor and against all defendants in an amount to be proven at trial;

    b.    For a preliminary and permanent injunction restraining defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them from:

        i.    accessing plaintiffs restricted-access DCMS,

        ii.    selling, distributing or using any property or proprietary, copyrighted, confidential or trade secret information obtained from plaintiffs DCMS, including the sale, distribution or use of the Mosaic DCMS that contains any of plaintiffs proprietary, copyrighted, confidential or trade secret information or that is derived from that information, and

        iii.    otherwise engaging in acts of unfair competition and interference with plaintiffs business relationships; and

    c.    An award of plaintiffs reasonable attorney fees that it incurs in bringing this claim;

3.    On plaintiffs Third Claim for Relief:

    a.    Judgment in plaintiffs favor and against defendant Ferman on each Count for breach of contract in an amount to be proven at trial;

    b.    For a preliminary and permanent injunction restraining defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them from:

        i.    accessing plaintiffs restricted-access DCMS,

        ii.    selling, distributing or using any property or proprietary, copyrighted, confidential or trade secret information obtained from

plaintiffs DCMS, including the sale, distribution or use of the
Mosaic DCMS that contains any of plaintiffs proprietary,
copyrighted, confidential or trade secret information or is derived
from that information, and

iii.    otherwise engaging in acts of unfair competition and interference
with plaintiffs business relationships; and

c.    An award of plaintiffs reasonable attorney fees that it incurs in bringing
these claims;

4.    On plaintiffs Fourth Claim for Relief:

a.    Judgment in plaintiffs favor and against defendants Straske and Mosaic in
an amount to be proven at trial;

b.    For a preliminary and permanent injunction restraining defendants, their
officers, agents, servants, employees, and attorneys, and those in active
concert or participation with them from:

i.    accessing plaintiffs restricted-access DCMS,

ii.    selling, distributing or using any property or proprietary,
copyrighted, confidential or trade secret information obtained from
plaintiffs DCMS, including the sale, distribution or use of the
Mosaic DCMS that contains any of plaintiffs proprietary,
copyrighted, confidential or trade secret information or is derived
from that information, and

iii.    otherwise engaging in acts of unfair competition and interference
with plaintiffs business relationships;

5.    On plaintiffs Fifth Claim for Relief:

a.    Judgment in plaintiffs favor and against all defendants in an amount to be
proven at trial;

b.    For a preliminary and permanent injunction restraining defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them from:

    i.    accessing plaintiffs restricted-access DCMS,

    ii.    selling, distributing or using any property or proprietary, copyrighted, confidential or trade secret information obtained from plaintiffs DCMS, including the sale, distribution or use of the Mosaic DCMS that contains any of plaintiffs proprietary, copyrighted, confidential or trade secret information or is derived from that information, and

    iii.    otherwise engaging in acts of unfair competition and interference with plaintiffs business relationships;

**6.**    On plaintiffs Sixth Claim for Relief, judgment in plaintiffs favor and against all defendants in an amount to be proven at trial; and

7.    For such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on each of the claims above for which plaintiff is entitled to have the matter heard by a jury.

DATED:  June 14, 2007.

TONKON TORP LLP

By _____
JON P. STRIDE, OSB No. 90388
DAVID S. AMAN, OSB No. 96210
Stride Direct Dial:     503.802.2034
Stride Direct FAX:   503.972.3734
Stride email:            jons@tonkon.com
Aman Direct Dial:    503.802.2053
Aman Direct FAX:   503.972.3753
Aman email:            davida@tonkon.com
Of Attorneys for Plaintiff Alternative Legal
Solutions, Inc., dba Compli



# License and Subscription Agreement Order Sheet

**Issue** Date 05/26/2005

This License and Subscription Agreement ("Agreement") includes this Order Sheet, the attached Terms and Conditions, and Exhibits A, B, and C - all of which are incorporated herein by this reference. Customer's signature indicates understanding and acceptance of **entire** Agreement.

## GENERAL INFORMATION

| Customer **Organization** | Organization | Ferman Management Services Inc |
|---|---|---|
| | General Phone | 1306 W. Kennedy Blvd.  Tampa, FL 33606 |
| Customer Contact | Name & Title | James Brakeman |
| | Phone & Email | jbrakeman@fermanmail.net (813) 251-2765 |
| Billing **Information** | Contact Name & | MaryLou Schreck |
| | Phone & Email | (813) 251-2765 |
| | Billing Address | 1306 W. Kennedy Blvd. |
| | Billing City, State, | Tampa, FL 33606 |
| Other Information | P.O. Number | |
| | Compli Contact | |

## LICENSE INFORMATION FOR INITIAL TERM

Redacted

EXHIBIT ___1___

PAGE __1__ OF _4_



# License and Subscription Agreement
## Terms and Conditions

This License and Subscription Agreement ("Agreement") includes an Order Sheet. these Terms and Conditions, and Exhibits A, B, and C all of which are incorporated herein by this reference. This Agreement is between Compli and Customer as identified on the Order Sheet. This Agreement applies to all employees in Customer's organization ("Authorized Users").

1.  <u>License Grant.</u>  Subject to the provisions of this Agreement, Customer is granted a limited, non-transferable, non-exclusive license to use the Hosted Services, the accompanying Software Application, and Compli Content (collectively the "System"). Use shall be limited to Customer's internal compliance needs, and Customer may not offer the System for resale.  Except as expressly permitted under this Agreement, Customer shall not modify, supplement, adapt, translate or create derivative works based upon the System.  Customer shall not alter, reverse compile, reverse engineer, disassemble or otherwise attempt to examine the source or object code of the System.  Customer shall have no right to copy the System without Compli's prior written consent, which may be withheld for any reason.  Customer also agrees to abide by the Acceptable Use Policy attached as Exhibit A.

2.  <u>Authorized Users.</u>  Customer warrants that all Authorized Users will be bound by this Agreement.  The System may be accessed by up to the maximum number of Authorized Users indicated on the Order Sheet.  Compli reserves the right to collect additional Annual License Fees if the number of Authorized Active Users exceeds the maximum number indicated on the Order Sheet.  Inactive users will be audited and billed annually upon renewal and charged an annual rate as defined on the Order Sheet.  Customer will have the option to remove Inactive Users to avoid the Inactive User charge.  Customer agrees to carefully safeguard all passwords and is solely responsible for maintaining the confidentiality of passwords and account information.  Customer is solely responsible for all activities that occur under Customer's account, and agrees to immediately notify Compli of any unauthorized use of Customer's account or any other breach of security.  In the event that unauthorized third parties obtain access to the System in violation of any prohibitions in this Agreement, Customer shall indemnify and hold Compli harmless for all costs, expenses losses and damages, including without limitation, any Annual License Fees owed.

3.  <u>Customer Content.</u>  Customer is solely responsible for any content it creates or modifies, and any data (including but not limited to any personally identifiable information of Customer's employees, agents, subcontractors or other third parties) placed on the System by Authorized Users (collectively "Customer Content").  Customer warrants that Customer Content will not infringe on any third party intellectual property rights or violate any other laws or regulations.  In the event that Customer Content violates third-party intellectual property rights or other laws or regulations, Customer shall indemnify and hold Compli harmless for any costs. expenses, losses, damages and settlement amounts incurred by Compli in connection with the infringements or violations.

4.  <u>**Compli Sample** Content.</u>  The System may include sample forms, policies, guidelines, FAQs, and training provided by Compli or its licensors ("Sample Content").  Subject to Section 5, Customer has the limited right to reproduce these items on the System in their unmodified form.  Customer may also customize or modify Sample Content for Customer's internal use only.  Once customized or modified, these items become Customer Content and are the sole responsibility of Customer.  It is Customer's responsibility to ensure that any Sample Content or Customer Content it elects to use in conjunction with the System is appropriate for use within Customer's organization.

5.  <u>**Compli** Content.</u>  The System includes content that cannot be modified by Customer ("Compli Content").  Compli Content is the valuable, confidential, copyrighted and trade secret property of Compli or its licensors.  As between the parties, Compli owns all right, title and interest in all Compli Content.  Customer may make printouts or store insubstantial amounts of Compli Content to the extent permitted under the "fair use" provisions of the Copyright Act of 1976.

EXHIBIT __I__
PAGE __2__ OF __4__

6. **Confidentiality.** Each party agrees not to use the **Confidential** Information of the other party for its own benefit, or for the benefit of any third **party** (except as allowed herein), and agrees not to disclose the Confidential Information to any third party, except as may be required in its performance under this Agreement or to comply with legitimate demands for production under court order, subpoena or legal warrants from government agencies or courts with appropriate jurisdiction.    If Compli is subpoenaed or required to assist in document production or other types of discovery in reference to any charge, claim or lawsuit in which Customer is involved with a third party, Compli will provide Customer prompt written notice of the same, but reserves the right to charge Customer at its then existing hourly professional services rate.    For the purposes of this Agreement, **"Confidential** Information" includes, without limitation, Customer Content, Compli Content, any patent applications, trade secrets, copyrighted information, business and marketing plans, Customer employment policies and/or manuals, the identities **of** customers and suppliers, future products, product developments and any other proprietary Information of the parties. Any written document or other tangible material will be appropriately marked by a disclosing party to indicate whether it contains Confidential Information; however, information in the form of data transmitted electronically which falls within the list of examples above need not be appropriately marked to be Confidential Information and shall be protected pursuant to this provision. Confidential Information shall not be treated as confidential, even if it is designated as such by a disclosing Party if: i) it is or becomes available to the public without confidentiality restrictions through no unauthorized act of a receiving party; ii) it is received from a third party who is not under an obligation of confidence to a disclosing party: or. iii) is independently developed by employees or contractors of a receiving party who did not use the Confidential Information of a disclosing Party in the development.

7. Security and Restrictions to Access. Compli will restrict access to the System to Compli's employees and authorized agents for the purpose of providing professional services and scheduled modifications or updates.    Compli will make commercially reasonable efforts and employ security measures to prevent unauthorized third parties from accessing the System and/or any Confidential Information. Compli's Privacy and Security Policies and Practices protecting access to and disclosure of Confidential Information is set forth on Exhibit B hereto and incorporated by this reference.

8. Modifications and Updates.    Compli reserves the right to modify the Annual License Fee upon any Renewal Date. Compli reserves the right to modify, change, update or discontinue any aspect of the System at any time, including the availability of any feature, database, Sample Content or Compli Content. For an additional fee Compli may offer new versions or modules that provide functions and features beyond those provided by the System licensed under this Agreement. Compli agrees it will not change any Customer Content without the prior written consent of Customer.

9. Internet Access.    Customer is responsible for selecting, purchasing, installing and maintaining the hardware and software necessary to access the Internet and the System.

10. Ownership.  The System is licensed, not sold.  Customer acknowledges that the System (including any changes Customer may request or suggest) is the property of Compli or its licensors. Title to the System and all related intellectual property will remain with Compli and its licensors at all times, as will all other rights not explicitly granted to Customer in this Agreement.  Customer Content is the property of Customer, and except for Compli's obligations under Section 6 above, Customer agrees it is solely responsible for all Customer Content on the System.

11. Term and Termination.  This Agreement will be for an Initial Term beginning on the Effective Date and ending on the End Date as indicated on the Order Sheet. This Agreement will automatically renew for one (1) year "Renewal Terms." This Agreement may be terminated by either party: (a) upon 60 days' written notice prior to the end of the Initial Term or any Renewal Term: (b) for a material breach by either party upon thirty (30) days written notice specifying the breach unless, within the period of notice, all specified material breaches have been cured; or (c) automatically upon notice, if the other party becomes insolvent, has a proceeding commenced against it for relief under bankruptcy



**License and Subscription Agreement
Exhibit A - Acceptable Use Policy**

This Acceptable Use Policy is intended to protect the integrity, reliability and security of Customer Content, the System, and the products and services provided by Compli to other customers. The following are examples of actions that are strictly prohibited under the Agreement, but it is not an exhaustive list of prohibited activities. Violation of this Acceptable Use Policy could result in immediate suspension or termination of the Agreement without notice:

<u>Customer and Authorized Users **may not**:</u>

- Resell, rent, assign, or sublease the System or any component of the System
- Use the System to conduct any illegal activity or other activity that infringes the rights of others
- Transmit or publish any content that contains defamatory or obscene matter
- Violate any intellectual property rights or licenses
- Remove Compli trademarks and acknowledgements of development without the express written permission of Compli
- Remove any copyright notices on the System or on any materials printed from the System
- Violate the privacy rights of others
- Compete with Compli **by** developing a competing product in the compliance marketplace

  Commit any acts that cause damage or injury to Compli or any of Compli's customers
- Reverse engineer, copy or reproduce the System or any component of the System

  Intentionally introduce malicious programs (e.g., viruses. worms, Trojan horses, etc.)
- Attempt security breaches or attempt to disrupt Internet communication
- Execute any form of network monitoring (e.g., packet sniffer) that will intercept data

  Attempt to circumvent Customer authentication or security of any host, network, or account ("cracking")
- Attempt to interfere with or deny service to any user or any host (e.g., Denial of Service Attacks)
- Infringe on any copyrights - IT IS CUSTOMER'S SOLE RESPONSIBILITY TO USE THE SYSTEM IN COMPLIANCE WITH ALL APPLICABLE COPYRIGHT LAWS