IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ALTERNATIVE LEGAL SOLUTIONS, INC., an Oregon corporation, dba COMPLI,<br><br>        Plaintiff,<br><br>        v.<br><br>FERMAN MANAGEMENT SERVICES, CORPORATION, a Florida corporation; MOSAIC INTERACTIVE, LLC, a Florida limited liability company; and STEPHEN B. STRASKE II, individually,<br><br>        Defendants. | CV-07-880-ST<br><br>FINDINGS AND RECOMMENDATION |

STEWART, Magistrate Judge:

**INTRODUCTION**

Plaintiff, Alternative Legal Solutions, Inc., dba Compli, ("Compli"), an Oregon corporation, filed this action on June 14, 2007, against a Florida corporation, Ferman Management Services Corporation ("Ferman"), a Florida limited liability company, Mosaic Interactive, LLC ("Mosaic"), and Stephen B. Straske, II ("Straske"), who is an attorney licensed

1 - FINDINGS AND RECOMMENDATION

to practice law in Florida, the Vice President and Corporate Counsel of Ferman and a member of the Board of Advisors of Mosaic. Compli develops, sells, installs, and provides ongoing support for a "Dealership Compliance Management System," ("DCMS"), a web-based compliance system marketed primarily to automobile dealerships. Compli alleges that defendants have unlawfully acquired its proprietary and confidential information, allowing Mosaic to develop its own on-line competing compliance system.

The Complaint alleges four claims against all defendants: (1) violation of the Computer Fraud and Abuse Act, 18 USC §§ 1030 *et seq* (First Claim); (2) misappropriation of trade secrets in violation of ORS 64.461 *et seq* (Second Claim); (3) tortious interference with prospective business relationship (Fifth Claim); and (4) trespass (Sixth Claim). It also alleges claims for breach of contract against defendant Ferman (Third Claim) and tortious interference with contract against defendants Straske and Mosaic (Fourth Claim).

This Court has federal question jurisdiction pursuant to 18 USC § 1030(g) and 28 USC § 1331 and diversity jurisdiction pursuant to 28 USC § 1332. In addition, Compli intends to amend its Complaint to add a claim for copyright infringement under the Copyright Act, 17 USC § 101, *et seq*, once it obtains the proper copyright registrations. That amendment will also provide the Court with subject matter jurisdiction pursuant to 28 USC § 1338.

Defendants Straske and Mosaic have filed a Motion to Dismiss Pursuant to FRCP 12(b)(2) (docket # 21) based on a lack of personal jurisdiction. For the reasons set forth below, that motion should be denied.

///

///

2 - FINDINGS AND RECOMMENDATION

**STANDARDS**

Under FRCP 12(b)(2), a defendant may move for dismissal on the ground that the court lacks personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Ballard v. Savage*, 65 F3d 1495, 1498 (9th Cir 1995); *Rano v. Sipa Press, Inc.*, 987 F2d 580, 587 (9th Cir 1993), citing *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F2d 1280, 1285 (9th Cir 1977). When a court does not conduct an evidentiary hearing, but makes its jurisdictional decision based on pleadings and affidavits, the plaintiff is required merely to make a *prima facie* showing of personal jurisdiction to defeat a motion to dismiss. *Data Disc, Inc.*, 557 F2d at 1285. That is, the plaintiff need only demonstrate facts that if true, would support jurisdiction over the defendant. *Ballard*, 65 F3d at 1498. To the extent that the parties' affidavits conflict, the conflicts must be resolved in the plaintiff's favor. *Data Disc, Inc.*, 557 F2d at 1284; *Dole Foods Co., Inc. v. Watts*, 303 F3d 1104, 1108 (9th Cir 2002). When the jurisdictional facts are intertwined with the merits, a motion to dismiss for lack of personal jurisdiction should usually be denied. *Data Disc, Inc*., 557 F2d at 1285.

Personal jurisdiction is proper only if the forum state's long-arm statute confers personal jurisdiction over the nonresident defendant and the exercise of jurisdiction comports with federal due process. *Fireman's Fund Ins. Co. v. National Bank of Coops.*, 103 F3d 888, 893 (9th Cir 1996); *Chan v. Society Expeditions, Inc.*, 39 F3d 1398, 1404-05 (9th Cir 1994), *cert denied*, 514 US 1004 (1995). Oregon's long arm statute, Oregon Rule of Civil Procedure 4, extends personal jurisdiction to the extent permitted by federal due process. *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F2d 758, 760 (9th Cir 1990).

///

3 - FINDINGS AND RECOMMENDATION

Due process requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 292 (1980); *International Shoe Co. v. State of Washington*, 326 US 310, 316 (1945). The fundamental issue is whether a defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F2d 1392, 1397 (9th Cir 1986), *quoting World-Wide Volkswagen*, 444 US at 297.

There are two types of personal jurisdiction: general and specific. *Reebok Int'l Ltd. v. McLaughlin,* 49 F3d 1387, 1391 (9th Cir), *cert denied*, 516 US 908 (1995). General jurisdiction exists if the nonresident's contacts with the forum state are continuous and systematic, and the exercise of jurisdiction satisfies traditional notions of fair play and substantial justice. *Id*, *citing Core-Vent Corp. v. Nobel Indus. AB*, 11 F3d 1482, 1485 (9th Cir 1993). Compli does not claim general jurisdiction over defendants Mosaic and Straske.

Specific jurisdiction is determined by a three part test: (1) the nonresident defendant must purposefully direct her activities at, consummate some transaction with, or perform some act by which she purposefully avails herself of the privilege of conducting activities in the forum; (2) the claim must be one arising out of or relating to defendants forum related activities; and (3) the exercise of jurisdiction must be reasonable. *Ballard*, 65 F3d at 1498. Each of these elements must be satisfied before the exercise of jurisdiction is proper. *Pacific Atl. Trading Co., Inc. v. M/V Main Express*, 758 F2d 1325, 1329 (9th Cir 1985).

///

///

4 - FINDINGS AND RECOMMENDATION

**ALLEGATIONS**

The pleadings and affidavits construed in Compli's favor establish the following:

Compli launched its web-based DCMS in 2002 after a nearly two-year period of development. Complaint, ¶ 2. Compli upgraded its product with governance content and enhanced management reporting capabilities in 2003 and began marketing and selling its DCMS to 18 industries in 2004. *Id*. By January 2005, Compli began to focus its marketing and sales on the automobile dealer industry nationwide, expending significant time and money developing specific programs and services directed at this industry. *Id*. Using a subscription model, Compli's clients pay an annual license fee for authorized access to the system. *Id*.

Compli's DCMS is accessed by dealer employee users and designated system administrators by using a confidential secure password to enter a robust web site. *Id*, ¶ 3; Myers Decl., ¶ 2; Leneve Decl., ¶ 3. The web site is populated with client-specific data and is hosted by a Compli third-party contractor. *Id*. The user can review policies, complete training exercises, and file reports on line. *Id*. The system administrators have broader access, allowing them to create user profiles, add and edit role-based employee groups and various types of content, establish each employee's required training and policy reviews, and determine who in the organization will receive and monitor the employee's reports. *Id*. Compli's DCMS provides training and policies related to employment practices risks (harassment, discrimination, FMLA and wage and hour issues), specific automobile dealer regulatory risks (selling, advertising, finance and insurances practices), corporate governance, internal financial controls, worker safety, information technology protection, and environmental risks. Complaint, ¶ 3. It also allows clients to measure employee activity to reduce organizational risk. *Id*. Until Mosaic

5 - FINDINGS AND RECOMMENDATION

entered the automobile dealer market with a web-based compliance system, Compli had one partial competitor that markets primarily in California with only limited elements of post-hire employment practices capabilities. *Id*, ¶ 4; Leneve Decl., ¶ 4.

Through a License Agreement effective June 1, 2005, Compli licensed to Ferman the right to use Compli's DCMS. Complaint, ¶ 12 & Exhibit 1. By its terms, the License Agreement was effective for 18 months. *Id*. In reliance upon Ferman's execution of the License Agreement, Compli provided Ferman with access to its DCMS, including the organizational structure and logic that Compli made available to designated system administrators at Ferman. *Id*, ¶ 13. Compli's DCMS contains proprietary copyrighted material and confidential trade secret information. *Id*. In the License Agreement, Ferman agreed to a number of terms intended to protect Compli's proprietary and trade secret information and copyrighted material and to provide Compli with a remedy for violation of the agreement. *Id*, ¶ 14.

From the effective date of the License Agreement until approximately February 2007, Compli believed that Ferman was performing appropriately under the terms of the License Agreement. *Id*, ¶ 15. Compli provided technical support services to Ferman and, when requested, modified the content and functionality of the DCMS. *Id*.

The License Agreement required Ferman to provide written notice to Compli 60 days or more prior to the termination of the License Agreement if Ferman did not intend to renew the agreement. *Id*, ¶ 16. Accordingly, Ferman's written non-renewal notice was due on October 1, 2006. *Id*.

Compli believes that sometime in 2006, Straske and other Ferman employees, along with Mosaic's President, James Ganther ("Ganther"), and others engaged by him, decided to develop

6 - FINDINGS AND RECOMMENDATION

a web-based dealership compliance management system to replace Compli at Ferman and to compete directly against Compli in the automobile sales industry. *Id*, ¶ 18.

On October 2, 2006, Mosaic filed its Articles of Organization with the Florida State Division of Corporations. *Id*, ¶ 25. On October 3, 2006, Fountain Holdings Corporation, Mosaic's managing member, filed its Articles of Incorporation with the Florida State Division of Corporations. *Id*.

On January 4, 2007, Straske logged onto Compli's DCMS web site through Ferman's access code. Myers Decl., ¶ 4. Using a secure password that he was not authorized to use, he reviewed and signed a policy and completed a training module. *Id*. His access was that of an end-user only. Straske Aff., ¶ 6. On January 19 and 26, 2007, Ganther logged onto Compli's DCMS web site using Ferman's access code.[1] Myers Decl., ¶ 5. Using a secure password that he was not authorized to use, Ganther reviewed and signed five policies and completed two training modules. *Id*. On February 8, 2007, Ganther again logged onto Compli's DCMS web site and completed a training module which was one of the same training modules completed on January 19. *Id*. On February 9, 2007, one of Ferman's designated system administrators, Kimberly White, created two new system users, Tim Jenkins ("Jenkins") and Lindsay Sims-Bohnenstiehl ("Bohnenstiehl"). *Id*, ¶ 6. On February 13, 2007, Bohnenstiehl used a secure password that she was not authorized to use to log onto the Compli DCMS web site and completed 12 training modules, including several modules more than one time. *Id*. Bohnenstiehl accessed the Compli DCMS web site through the same internet system provider as

---

[1] Ganther states that he never used his username and login to the Ferman portion of Compli's website. Ganther Decl., ¶ 18. Instead, it appears that Mosaic's vendor logged on using the login information provided to Ganther. *Id,* ¶ 19.

Ganther. *Id*. None of these individuals were authorized to access Compli's DCMS web site using a Ferman access code. Complaint, ¶ 24. Moreover, Ganther, Jenkins and Bohnenstiehl were not Ferman employees and thus were not authorized to receive or use the password to the Compli DCMS web site. *Id*.

Compli believes that Ferman, Straske, Ganther and others, acting on behalf of Mosaic, analyzed, copied and implemented aspects of Compli's DCMS, including its organization and logic, in the development of a competing system. *Id*, ¶ 21. By accessing Compli's DCMS, they identified ways to differentiate a competing DCMS in product function and style. *Id*.

According to Mosaic, another company, Net Dimensions, wrote the commercially-available, off-the-shelf software that Mosaic licensed. Ganther Aff, ¶ 3. Whereas Compli tracks a dealership's on-line training, Mosaic claims that it provides a complete compliance program and is aimed at a "different market segment." *Id*. However, Compli has long described its product as being comprehensive in nature, covering the same areas (and more) as those described by Mosaic. Leneve Decl., ¶ 6. The description of Mosaic's product on its website closely resembles Compli's description of its DCMS and Mosaic's compliance program closely tracks Compli's DCMS in many areas. *Id*, ¶¶ 6 -7.

In approximately February and March of 2007, Compli began to ask Ferman about Ferman's failure to make the 2007 renewal payment. Complaint, ¶ 16. After repeated inquiries, Ferman stated that it had terminated the License Agreement and had no intention of continuing to use Compli's services. *Id*. Ferman indicated that it was going to use an alternative provider. *Id*. According to Ferman, it had stopped using Compli's DCMS as of the termination date. *Id*. Ferman's alternative DCMS provider is Mosaic. *Id*, ¶ 17.

8 - FINDINGS AND RECOMMENDATION

At an annual meeting of the National Association of Dealer Counsel on March 12, 2007, Ganther (Mosaic's President) approached James D. Apt ("Apt"), Compli's Regional Sales Manager for the Southwestern United States. Apt Declaration, ¶¶ 1-2. Ganther stated that he was working with Mosaic and that, as a result, he would be Compli's "competition." *Id*, ¶ 2. He also said that Mosaic was backed by an angel investor, which he described as "local Tampa old family money" or words to that effect. *Id*.

On March 20, 2007, Apt participated in a conference call with Dave Robertson ("Robertson"), the Executive Director of the Association of Finance and Insurance Professionals, a non-profit organization that acts as the sanctioning body in the industry. *Id*, ¶¶ 3-4. Robertson acknowledged that once Mosaic's business was up and running, it would be Compli's "direct competitor. *Id*, ¶ 4.[2]

Ganther traveled to Oregon for Mosaic only once on April 30, 2007, to meet with a third-party administrator of service contracts sold through dealerships as a potential distribution channel for Mosaic's product. Ganther Aff, ¶ 6. According to Denny McNally, President of National Warranty Corporation ("NWC"), Ganther met with him in Oregon to persuade him to act both as an investor and partner with Mosaic. Leneve Decl., ¶¶ 8-9. NWC specializes in providing finance and insurance products and services to automobile dealers in the Pacific Northwest and has an ongoing business relationship with Compli. *Id*.[3]

Since approximately April 2007, Mosaic has been advertising and marketing its product nationwide to automobile dealers, including in Oregon to Compli's current customers and

---

[2] The remainder of Robertson's conversation with Apt has been stricken.

[3] The remainder of McNally's conversation with Leneve has been stricken.

prospective customers, to compete directly with Compli. Complaint, ¶ 27. Compli believes that some of its prospective customers have elected to engage Mosaic's services or are considering Mosaic's services rather than Compli's. *Id*. Compli seeks to permanently enjoin defendants from further misuse of its information to prevent them from further profiting from their misconduct and further harming Compli. *Id*, ¶ 5.

## FINDINGS

### I. Purposeful Availment

Purposeful availment is shown "if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Ballard*, 65 F3d at 1498. Although contacts that are "isolated" or "sporadic" may support specific jurisdiction if they create a "substantial connection" with the forum, the contacts must be more than random, fortuitous, or attenuated. *Burger King v. Rudzewicz*, 471 US 462, 475 (1985). A defendant need not be physically present within the forum, provided its efforts are purposefully directed toward forum residents. *Id* at 476.

Mosaic and Straske deny that they took any deliberate action within Oregon or created any continuing obligations to Oregon residents. Straske has had no contact with Oregon. Ganther had only one meeting in Oregon which created no continuing obligations with any Oregon residents. Other than Ganther's one meeting in Oregon, no other corporate officer, registered agent, employee or sales representative of Mosaic has ever had any contact with Oregon.

However, Compli asserts personal jurisdiction over Mosaic and Straske on another basis. Personal jurisdiction may be asserted over a defendant who directs tortious conduct towards the

forum state, knowing the effects of the conduct will cause harm. *Calder v. Jones*, 465 US 783 (1984) (California court could exercise personal jurisdiction in an action arising out of defendants' intentional conduct in Florida which was allegedly calculated to cause injuries to plaintiff in California). Compli argues that Mosaic and Straske purposely directed their torts at Oregon by illegally accessing Compli's DCMS to assist Mosaic in developing a competing product. According to Compli, Straske gained access to Compli's DCMS after he was already in the process of advising Mosaic, and Ganther allowed two employees of Mosaic's software vendor to use his password to access Compli's DCMS in order to size up the capabilities of Mosaic's competitor.

If true, these are the types of intentional tortious acts that satisfy the purposeful direction test for personal jurisdiction. A defendant's acts are purposefully directed at Oregon if they were committed in order to compete against a plaintiff in Oregon. For example, defendants were subject to personal jurisdiction in Oregon if they sought to "steal" confidential information and "used trade secrets wrongfully in their position as a direct competitor of plaintiff." *Unicru, Inc. v. Brenner*, 2004 WL 785276 at *8 (D Or, April 13, 2004).

Accepting Compli's allegations and affidavits as true, Mosaic must be considered to be a competitor of Compli. The fact that Ferman substituted Mosaic's system in place of Compli's DCMS is evidence of such competition, as are the comments of Ganther and Robertson to Apt.

Nevertheless, Mosaic and Straske contend that Compli has presented insufficient evidence that they engaged in any tortious acts by illegally accessing Compli's DCMS. As an end-user, Straske's access to Compli's DCMS on January 4, 2007, was permitted under the License Agreement. According to Section 11, the term of the License Agreement automatically

11 - FINDINGS AND RECOMMENDATION

renewed for one year on December 1, 2006, and was not terminated by Ferman until sometime during the first quarter of 2007. Brakeman Decl, ¶¶ 4, 9. Compli did seek past due lease payments from Ferman during January and February 2007, but did not terminate the License Agreement for nonpayment. *Id*, ¶¶ 1, 7-8.

     Even though Straske may have had the right of access through Ferman to Compli's DCMS as an end-user on January 4, 2007, it can be inferred that he did so in order to assist Mosaic in developing a competing product. First, the timing of Straske's access is suspect. He logged on just before multiple log-ons by Ganther and/or Mosaic's vendor using Ferman's access code. Straske also logged on while Ferman was not paying its lease payments to Compli and shortly before Ferman terminated the License Agreement effective December 1, 2006. Given his position at Ferman, he would have been aware at that time of Ferman's intent to terminate its lease with Compli. Furthermore, at some unknown time in early 2007, Straske joined Mosaic's Board of Advisors, which means that he may have been acting on his own behalf, as well as Ferman's behalf, as early as January 4, 2007.[4]

     Second, it is not at all clear why Straske, as the Vice President and corporate counsel, found it necessary to access the DCMS on January 4, 2007, to complete a training module. He states in a conclusory fashion that he visited the Compli website "to read Ferman employment policies, take quizzes based on those policies, monitor the policies, and evaluate direct reports" and "[a]t no time . . . ever logged-on to the Compli Web site for the purpose of obtaining or utilizing Compli's software to further Mosaic's business interest." Straske Aff., ¶ 8. He also

---

[4] Although it cannot be considered for purposes of this motion, Ferman and Straske have subsequently admitted that Straske is an owner of Mosaic and that one or more owners of Ferman have an indirect relationship interest in Mosaic. Furthermore, when they acquired interests in Mosaic is not specified.

12 - FINDINGS AND RECOMMENDATION

states that he did not "access or use any of Compli's confidential infromation to further the business interests of Mosaic." *Id*, ¶ 14.  However, he notably does not state the specific reason he felt it was necessary as a Ferman employee and corporate officer to log on January 4, 2007, to complete a training module.  It seems odd that he would do so at all and particularly at that time.

Straske also argues that the fiduciary shield doctrine protects him from being sued in Oregon.  A corporation's contacts with a forum state are not automatically imputed to the corporation's officers and employees.  *See, e.g., Sher v. Johnson*, 911 F2d 1357, 1365 (9th Cir 1990).  However, a corporate officer does not have a blanket exemption from personal jurisdiction simply because he claims his actions were taken on behalf of the corporation.  *See, Garrison v. Bally Total Fitness Holding Corp.*, 2005 WL 3143105 at *2 (D Or, Nov. 23, 2005).  An officer may still be held liable for his individual conduct, and his individual contacts with the forum may be viewed in determining personal jurisdiction.  *See, Calder*, 465 US at 790.  Compli alleges that Straske illegally accessed its DCMS and personally participated in developing Mosaic to be a competitor of Compli.  Because his individual contacts subject him to personal jurisdiction in Oregon, it is no shield that he is also an officer of Ferman.  *See id.*; *Garrison*, 2005 WL 3143105 at *2.

Similarly, it is not at all clear why in January and February 2007, Mosaic's vendor logged on 10 times to the Ferman portion of the Compli web site, signed five policies, and completed 15 training modules, including several modules more than one time.  An employee of Ferman created a username and login for Ganther which he claims he never used.  Ganther Aff., ¶ 18.  However, using the login information Ferman provided to him, both Bohnenstiehl and Tim Goewey, who work for Intelladon, one of Mosaic's vendors, logged-on to the Ferman portion of

13 - FINDINGS AND RECOMMENDATION

the Compli website. *Id*, ¶ 19. Ganther claims that their purpose "was not to utilize Compli's software to further Mosaic's business interests; rather they logged-on in order to determine if the software Intelladon had previously sold to Mosaic would provide the same reporting features as the Compli LMS, as Ferman had requested." *Id*. In other words, Ganther claims that the log-ons were for comparative purposes only, not to access Compli's confidential or proprietary information.

However, Ferman may have violated the License Agreement by allowing access by one of Mosaic's vendors. The License Agreement contains the following confidentiality provision: "Each party agrees not to use the Confidential Information of the other party for its own benefit, or for the benefit of any third party (except as allowed herein), and agrees not to disclose the Confidential Information to any third party . . . ." Complaint, Exhibit 1, p. 3, ¶ 6. Although Ferman could disclose its own information inserted into Compli's DCMS, Ferman agreed in the License Agreement that other information was confidential: "The System includes content that cannot be modified by Customer ('Compli Content'). Compli Content is the valuable, confidential, copyrighted and trade secret property of Compli or its licensors. As between the parties, Compli owns all right, title and interest in all Compli Content." *Id*, p. 2, ¶ 5.

The parties dispute whether the information obtained by Mosaic's vendor using Ganther's log-in constitutes such confidential information. Mosaic claims that any information that can be obtained by an end-user, such as Ferman, cannot possibly be confidential or proprietary. To the contrary, Compli claims that confidential and proprietary information includes the product function and style, capabilities, and other information not generally available from the public website. Not only must this court construe all disputed facts in

14 - FINDINGS AND RECOMMENDATION

Compli's favor, but this dispute also goes to the merits of Compli's claims and cannot be resolved at the pleading stage. For jurisdictional purposes, it is sufficient that Compli has presented *prima facie* evidence of potentially unauthorized access to its DCMS for the potentially unauthorized purpose of assisting Mosaic in developing a competing product in order to harm Compli.

II.     **Defendant's Forum-Related Activities**

The second requirement for finding specific personal jurisdiction is that the plaintiff's injury arises out or relates to the defendant's forum-related activities. The Ninth Circuit has adopted the "but for" test to determine if this requirement is met. *Shute v. Carnival Cruise Lines*, 897 F2d 377, 385 (9th Cir 1990), *rev'd on other grounds*, 499 US 585 (1991); *Gray & Co.*, 913 F2d at 761. The use of the "but for" test in the Ninth Circuit was reaffirmed in *Doe v. American Nat'l Red Cross*, 112 F3d 1048, 1051 n7 (9th Cir 1997).

This element is easily satisfied. But for Mosaic's and Straske's allegedly unlawful access and misappropriation of trade secrets, Compli would not have suffered harm in Oregon.

III.    **Reasonableness**

   A.   **Legal Standard**

In determining the reasonableness of exercising jurisdiction in the forum state, the court must weigh the following factors: (1) extent of defendants' purposeful injection into the forum; (2) defendants' burden from litigating in the forum; (3) extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Terracom v. Valley Nat'l Bank*, 49 F3d 555, 561 (9th Cir 1995), *citing Core-Vent Corp.*, 11 F3d at 1487-88.  No single factor is dispositive.  *Terracom*, 49 F3d at 561.

### B. Analysis of Factors

#### 1. Extent of Purposeful Interjection

The purposeful interjection factor weighs against Mosaic and Straske. As described above, Compli has sufficiently alleged that they have purposefully directed their actions to Oregon by illegally accessing and misusing Compli's DCMS.

#### 2. Oregon's Strong Interest

Compli is a corporate citizen of Oregon and has been alleged injured by defendants' tortious actions.  Oregon has "a strong interest in providing an effective means of redress for its residents tortiously injured."  *Panavision Int'l L.P. v. Toeppen*, 141 F3d 1316, 1323 (9th Cir 1998).  Thus, this factor also weighs heavily in favor of exercising jurisdiction over Straske and Mosaic.

#### 3. Efficiency

This factor typically focuses on the location of evidence and witnesses in a case.  *Caruth v. Int'l Psychoanalytical Ass'n,* 59 F3d 126, 129 (9th Cir 1995).  However, this concern is no longer as heavily-weighted "given the modern advances in communication and transportation." *Panavision Int'l,* 141 F3d at 1323.  Although some witnesses may reside out of state, some evidence will be located in Oregon where Compli has its principal place of business.  Furthermore, defendant Ferman consented to jurisdiction in Oregon when it signed the License Agreement.  Thus, Compli will continue to litigate against Ferman in this forum.  Dismissal of

Straske and Mosaic would lead to litigation in two separate forums, which would be extremely inefficient. As a result, this factor weighs against Mosaic and Straske.

####  4.    Sovereignty

No party has pointed out any issue involving Florida's sovereignty, and this court is aware of none. Therefore, this factor weighs against Mosaic and Straske.

####  5.    Burden on Defendants

The burden on Mosaic and Straske from litigating in Oregon is insignificant and no greater than the burden on Compli of litigating in Florida. Mosaic's President has traveled to Oregon for business once, and Straske is an officer of Ferman which is already a party to this lawsuit. Any burden on Mosaic and Straske can be reduced by conducting their depositions in Florida and through the use of technology. Accordingly, the relative burden on the parties in this case is neutral.

####  6.    Alternative Forum

Compli could pursue this case against Straske and Mosaic in Florida. However, that factor alone should not compel a finding that jurisdiction in Oregon is somehow unreasonable.

### C.    Conclusion

Nearly all of the seven factors relating to reasonableness weigh against Mosaic and Straske or are, at best, neutral. In sum, this court finds that it is reasonable for Mosaic and Straske to defend this case in Oregon. *See Corporate Inv. Bus. Brokers v. Melcher,* 824 F2d 786, 790 (9th Cir 1987).

///

///

17 - FINDINGS AND RECOMMENDATION

## RECOMMENDATION

For the reasons set forth above, Defendants Mosaic Interactive, LLC and Stephen B. Straske's Motion to Dismiss Pursuant to FRCP 12(b)(2) (docket # 21) should be DENIED.

## SCHEDULING ORDER

Objections to these Findings and Recommendations, if any, are due **December 14, 2007.** If no objections are filed, then the Findings and Recommendations will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will be referred to a district judge and go under advisement.

DATED this 28th day of November, 2007.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge